UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTIAN DUENAS BARRAZA,<br><br>                Petitioner,<br><br>    v.<br><br>ICE FIELD OFFICE DIRECTOR,<br><br>                Respondent. | Case No. C23-1271-BHS-MLP<br><br>REPORT AND RECOMMENDATION |

### I.     INTRODUCTION

Petitioner Christian Duenas Barraza ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, proceeding *pro se*, brings this 28 U.S.C. § 2241 habeas petition to obtain release from detention or a bond hearing. (Pet. (dkt. # 5).) Currently before the Court is Respondent's return memorandum and motion to dismiss. (Resp.'s Mot. (dkt. # 8).) Petitioner did not file a response.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that Respondent's motion to dismiss (dkt. # 8) be GRANTED, and that Petitioner's habeas petition (dkt. # 5) be DENIED, as further explained below.

REPORT AND RECOMMENDATION - 1

## II.  BACKGROUND

Petitioner, a native and citizen of El Salvador, was born in 1973 and entered the United States in 1981. (Messuri Decl. (dkt. # 9), Exs. A (dkt. # 9-1) at 1, D (dkt. # 9-4) at 4.) Petitioner has been arrested on several criminal offenses since arriving in the United States, including: (1) a 2009 charge for infliction of injury upon a child; (2) a 2012 charge for embezzlement; and (3) a 2016 charge for obscene matter with a minor, harmful matter sent, willful cruelty, and unlawful sexual intercourse. (*Id.*, Exs. B (dkt. # 9-2) at 1, C (dkt. # 9-3) at 4-7.) Petitioner's criminal convictions include: (1) a 2012 conviction for grand theft; and (2) a 2016 conviction for human trafficking of a victim under 18 years old, resulting in a sentence of twelve years in prison. (*Id.*) Petitioner ultimately served six years in prison for his 2016 human trafficking conviction. (*Id.*, Ex. D at 5.)

On April 28, 2022, Petitioner was arrested by Department of Homeland Security ("DHS") officials near his residence in Stockton, California, and remanded to NWIPC. (Messuri Decl., Exs. B, at 2, E (dkt. # 9-5), F (dkt. # 9-6) at 1, 3.) On May 6, 2022, DHS issued a Notice to Appear, alleging that Petitioner is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) due to his 2016 human trafficking conviction.[1] (*Id.*, Ex. G (dkt. # 9-7).)

On May 18, 2022, and again on June 8, 2022, Petitioner appeared before an immigration judge for a removal hearing and requested continuances, which were granted. (Messuri Decl., Exs. I (dkt. # 9-9) at 12-15, J (dkt. # 9-10) at 3-5.) On June 30, 2022, Petitioner again appeared for a removal hearing, which was continued to allow Petitioner to obtain his medical records. (*Id.*, Ex. K (dkt. # 9-11) at 4-5.) On July 21, 2022, Petitioner appeared before an immigration

---

[1] On July 14, 2022, DHS filed an additional charge of removability against Petitioner pursuant to 8 U.S.C. § 1227(a)(2)(F) for the commission of an offense described in 8 U.S.C. § 1182(a)(2)(H) ("Significant traffickers in persons"). (Messuri Decl., Ex. H (dkt. # 9-8).)

REPORT AND RECOMMENDATION - 2

judge for a removal hearing and requested a continuance of proceedings, which was granted. (*Id.*, Ex. L (dkt. # 9-12) at 3.)

On August 9, 2022, Petitioner was found removable for commission of an offense described in 8 U.S.C. § 1182(a)(2)(H), *i.e.*, his 2016 human trafficking conviction. (Messuri Decl., Ex. M (dkt. # 9-13) at 6-7, 11-12.) At his next removal hearing, on August 29, 2022, Petitioner was granted time to seek to adjust his status to cease removal proceedings. (*Id.*, Ex. N (dkt. # 9-14) at 18-19, 21-22.) On October 11, 2022, Petitioner appeared for a removal hearing and was again granted additional time to seek to adjust his immigration status. (*Id.*, Ex. O (dkt. # 9-15) at 4.)

On November 21, 2022, Petitioner appeared before an immigration judge, waived his right to adjust his status, and requested a hearing on his requests for cancellation of removal, as well as his application for asylum, withholding of removal, and protection under the Convention Against Torture. (Messuri Decl., Ex. P (dkt. # 9-16) at 2-3.) On March 20, 2023, Petitioner testified in support of his applications for relief, and the immigration judge denied his requests and ordered him removed to El Salvador. (*Id.*, Ex. D.)

On April 12, 2023, Petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA"). (Messuri Decl., Ex. Q (dkt. # 9-17).) On July 27, 2023, the BIA dismissed Petitioner's appeal, rendering his removal order administratively final. (*Id.*, Ex. A at 1.) On August 17, 2023, Petitioner, proceeding *pro se*, filed the instant habeas petition. (*See* Pet.)

On August 19, 2023, Petitioner filed a petition for review and a motion for stay of removal with the Ninth Circuit. (Messuri Decl., Ex. R (dkt. # 9-18) at 3; *see also Barraza v. Garland*, Case No. 23-1874 (9th Cir.).) At that time, the Ninth Circuit granted Petitioner a temporary stay of removal and set a briefing schedule for his petition for review. (*Id.*)

REPORT AND RECOMMENDATION - 3

### III. DISCUSSION

Petitioner argues in his petition that he is currently detained under 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1226(c), which mandates detention for certain categories of ICE detainees, and that his continued custody violates his due process rights. (Pet. at 2-5.) Petitioner seeks release from detention, or in the alternative, an individualized bond hearing. (*Id*. at 2.) Respondent argues that Petitioner's detention remains statutorily authorized pursuant to § 1226(c) and that his detention comports with due process. (Resp.'s Mot. at 2-3.)

### A. Statutory Basis for Petitioner's Detention

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens who are in removal proceedings.[2] 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Avilez v. Garland*, 69 F.4th 525, 529-530 (9th Cir. 2023). Section 1226(a) grants DHS the discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 583 U.S. 281, 303-06 (2018). Section 1226(c) includes any non-citizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A).

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to the Department of Homeland Security ("DHS"), while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1      Here, Petitioner was found to be removable pursuant to 8 U.S.C. § 1182(a)(2)(H) due to

2 his 2016 human trafficking conviction. Petitioner's detention is therefore statutorily mandated by

3 § 1226(c) until his removal proceedings have concluded.

4      Petitioner argues the statutory basis for his detention shifted from § 1226(c) to § 1226(a)

5 after his removal order became administratively final, citing *Casa-Castrillon v. Dep't of*

6 *Homeland Security*, 535 F.3d 942 (9th Cir. 2008). (*See* Pet. at 3-5.) But as previously noted,

7 Petitioner was granted a temporary stay of removal by the Ninth Circuit upon its acceptance of

8 his petition for review on August 19, 2023. (*See* Messuri Decl., Ex. R at 3; *see also Barraza*,

9 Case No. 23-1874 (9th Cir.), dkt. # 2.) Under *Casas-Castrillon*, a shift from § 1226(a) to

10 § 1226(c) would occur only after a non-citizen's removal proceedings have concluded or are

11 final. *See Casas-Castrillon*, 535 F.3d at 948 ("Once Casas' proceedings before the BIA were

12 complete, the Attorney General's authority to detain him under § 1226(c) ended and that

13 authority shifted instead to § 1226(a)."). Here, Petitioner's removal proceedings are ongoing, and

14 he thus remains subject to mandatory detention under § 1226(c).

15      In any case, *Casas-Castrillon* no longer remains good law considering the Supreme

16 Court's decision in *Jennings* and the Ninth Circuit's decision in *Avilez*, as both confirm

17 Petitioner is detained under § 1226(c) and not § 1226(a). In *Jennings*, the Supreme Court noted

18 the text of § 1226(c) "does not on its face limit the length of the detention it authorizes" and

19 instead "authorize[s] detention until the end of applicable proceedings." 583 U.S. at 297, 303. In

20 *Avilez*, the Ninth Circuit addressed the Supreme Court's ruling in *Jennings* and held *Jennings*

21 abrogated its prior precedent holding that a noncitizen's detention shifts authority from § 1226(c)

22 to § 1226(a) when seeking a determination on a petition for review of a final order of removal.

23 69 F.4th at 533-35. The Ninth Circuit found "*Jennings*'s reasoning regarding § 1226 makes clear

REPORT AND RECOMMENDATION - 5

1 that Subsection A and Subsection C apply to discrete categories of noncitizens—and not to

2 different stages of a noncitizen's legal proceedings" and "[t]hus, if a noncitizen is initially

3 detained under Subsection C, the Government's authority to detain her cannot switch to

4 Subsection A based on the stage of her legal case." *Id.* at 533-34. Consequently, the Ninth

5 Circuit held *Jennings* was "clearly irreconcilable" with its prior detention-shifting framework in

6 *Casas-Castrillon*. *Id.* at 534.

7 Because Petitioner's removal proceedings have not yet concluded, and given the Ninth

8 Circuit's recent decision in *Avilez*, the Court concludes that Petitioner remains subject to

9 mandatory detention under § 1226(c). *See also Murillo-Chavez v. Garland*, 2022 WL 16555994,

10 at *3 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176

11 (W.D. Wash. Oct. 31, 2022) (undersigned rejecting noncitizen's claim that his detention status

12 shifted from § 1226(c) to § 1226(a) after his removal order became administratively final).

13 Petitioner is therefore not entitled to release or a bond hearing on statutory grounds.

14     **B.**    **Petitioner is Not Otherwise Entitled to Release**

15 Petitioner additionally appears to request release from detention, or a bond hearing, on

16 the basis his detention has become indefinite. (Pet. at 5-6.) A noncitizen detained under

17 § 1226(a) is entitled to release if he can show that his detention is indefinite within the meaning

18 of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). *See*

19 *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (9th Cir. 2008).

20 As explained above, the Court has determined Petitioner's detention is governed by

21 § 1226(c) and not § 1226(a). Petitioner also fails to present any evidence ICE will not be able to

22 remove him if he is ultimately ordered removed at the conclusion of his appeals. Consequently,

23

REPORT AND RECOMMENDATION - 6

the Court finds Petitioner's removal is not indefinite and that his detention continues to be mandatorily authorized by § 1226(c).

### C. Due Process

Finally, even if authorized under Section 1226(c), Petitioner's continued detention must comport with due process. To that end, Petitioner contends his prolonged detention violates his due process rights, and that he is entitled to release or a bond hearing. (Pet. at 1-2, 6.) Respondent argues that Petitioner's continued mandatory detention is reasonable and comports with due process. (Resp.'s Mot. at 8-18.)

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c) explaining that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens convicted of certain crimes and holding that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in most cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir.

REPORT AND RECOMMENDATION - 7

2018). District courts that have considered the constitutionality of prolonged mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" [3] *Martinez v. Clark*, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi*, 434 F. Supp. 3d at 923-24 (granting habeas petition and ordering bond hearing for noncitizen whose mandatory detention had become unreasonably prolonged).

In cases involving § 1226(c), judges in this District have adopted a "multi-factor analysis that many other courts have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*, 2019 WL 5968089 at *6-7. Under the *Martinez* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

---

[3] Whether due process requires a bond hearing for noncitizens detained under § 1226(c) remains an open question in the Ninth Circuit. *See Avilez*, 69 F.4th at 538 (declining to rule on whether due process required a bond hearing for a noncitizen detained under § 1226(c) and remanding to the district court for consideration of that claim); *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for [noncitizens] detained under § 1226(c) is not before us today. And we take no position on that question.").

REPORT AND RECOMMENDATION - 8

*Id.* at *9 (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore*, *Zadvydas*, and pre-*Jennings* circuit court cases holding that as a matter of constitutional avoidance, § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 583 U.S. 281; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 583 U.S. 281; *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).

Consistent with the prior decisions of judges in this District, the Court will apply the *Martinez* factors to assess whether Petitioner's § 1226(c) detention has become unreasonable.

        i.     *Length of Detention to Date*

First, the length of detention is the most important factor. *See, e.g.*, *Martinez*, 2019 WL 5968089 at *9; *Sajous*, 2018 WL 2357266 at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089 at *9 (finding nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266 at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months.").

REPORT AND RECOMMENDATION - 9

Here, at the time Petitioner filed his petition, he had been detained for an ongoing period of 15 months. (*See* Pet. at 1.) Petitioner's detention has extended to approximately 19 months during the pendency of this proceeding. Citing to *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), Respondent argues Petitioner's length of detention is a result of his own litigation choices in seeking continuances, extensions, and challenging his removal, and therefore, this factor should weigh in favor of the Government. (*See* Resp.'s Mot. at 14-16 (citing *Rodriguez Diaz*, 53 F.4th at 1208).) However, the Ninth Circuit's consideration of length of detention in *Rodriguez Diaz* was with regard to the first factor under the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), concerning a due process challenge for a noncitizen detained under § 1226(a) who was provided an initial bond hearing, and not a due process challenge brought under § 1226(c).[4] *See Rodriguez Diaz*, 53 F.4th at 1207-08. As such, based on the 19-month length of detention to this point in time, the Court finds the first factor weighs in favor of granting Petitioner a bond hearing.

### ii. Likely Duration of Future Detention

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including

---

[4] The three-factor test outlined in *Mathews* "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." 424 U.S. at 334. Courts in the Ninth Circuit, including this District, apply the *Mathews* test to due process challenges brought with respect to noncitizens who have been afforded initial bond hearings under § 1226(a) when their detention has become prolonged. *See Rodriguez Diaz*, 53 F.4th at 1206-07; *Singh v. United States Immigration & Customs Enf't*, 2023 WL 4624478, at *2 (W.D. Wash. July 19, 2023) ("For noncitizens detained under § 1226 who were not given an initial bond hearing, however, *Mathews* does not sufficiently test whether their due process rights were violated, and courts in this District instead apply a different multifactor test . . . ."); *see also Ortuno-Perez v. ICE Field Office Dir.*, 2023 WL 5807305, at *4-5 (W.D. Wash. Aug. 1, 2023), *report and recommendation adopted*, 2023 WL 5802516 (W.D. Wash. Sept. 7, 2023).

administrative and judicial appeals." *Martinez*, 2019 WL 5968089 at *9. As noted, Petitioner's petition for review was filed with the Ninth Circuit on August 19, 2023. According to the Ninth Circuit's public website, oral argument in a civil case may not be set for 6-12 months from the time the notice of appeal was filed, and following argument, the Court of Appeals may take three months to a year to decide the case. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last accessed Dec. 6, 2023).

A review of the docket in Petitioner's pending appeal reveals the briefing for Petitioner's petition for review will not be completed until February 2024 at the earliest. *See Barraza*, Case No. 23-1874 (9th Cir.), dkt. # 9. It appears Petitioner could therefore potentially be facing two years or more of additional time in custody. Accordingly, the Court finds this factor weighs in favor of Petitioner.

          *iii.*    *Criminal History*

Next, under the third and fourth factors, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089 at *9; *Cabral*, 331 F. Supp. 3d at 262. The relevance of these factors is that they are suggestive of whether the detainee is a danger to the community or a risk of flight such that a bond hearing would be futile. *See Cabral*, 331 F. Supp. 3d at 262.

Here, Petitioner's criminal conviction for human trafficking resulted in a sentence of twelve years in prison, with Petitioner ultimately serving six years. (*See* Messuri Decl., Exs. B at 1, C at 4-6, D at 5.) Petitioner's length of detention to this point has not exceeded his criminal sentence. Furthermore, Petitioner's human trafficking conviction involved the trafficking of an individual who was under 18 years old, specifically the prostitution of his teenage stepdaughter, and his criminal history includes multiple crimes against children. (*See id.*, Exs. B at 1, C at 4-6,

REPORT AND RECOMMENDATION - 11

D at 6-9.) The Court therefore finds the third and fourth factors weigh significantly in favor of the Government. *See Murillo-Chavez*, 2022 WL 16555994 at *6 (undersigned finding these factors weighed "significantly" in favor of the government where "Petitioner's criminal history includes multiple crimes against children . . . .").

          iv.      Conditions of Detention

Under the fifth factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. *Martinez*, 2019 WL 5968089 at *9. "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (citation and internal quotations omitted).

The Court finds this factor weighs neutrally because the parties have not submitted any evidence regarding the conditions at the NWIPC.

          v.      Delays in Removal Proceedings

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089 at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 665 (citing *Hernandez v. Decker*, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).

Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [non-citizen] may serve not only to put off the final day of deportation, but also to

compel a determination that the [non-citizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [non-citizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [non-citizen]."). Thus, this factor weighs against finding detention unreasonable when a non-citizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019).

With respect to the sixth factor, Petitioner's multiple requests for continuances during his removal proceedings, for extensions to adjust his status, and filing of a petition for review with the Ninth Circuit, have added time to his length of detention. (*See* Messuri Decl., Exs. I at 12-15, J at 3-5, K at 4-5, L at 3, N at 18-19, 21-22, O at 4, R at 3; *see also Barraza*, Case No. 23-1874 (9th Cir.), dkt. # 2.) However, there is no evidence in the record Petitioner has prolonged his stay by abusing the processes provided. Therefore, the Court finds the sixth factor weighs in favor of Petitioner.

With respect to the seventh factor, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266 at *11. Here, there is no evidence in the record the Government has engaged in any deliberate delay tactics or caused undue delay in Petitioner's proceedings. Accordingly, the Court concludes the seventh factor weighs in the Government's favor.

REPORT AND RECOMMENDATION - 13

     *vi.* *Likelihood Removal Proceedings Will Result in Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089 at *10; *Sajous*, 2018 WL 2357266 at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id.* at *10. "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

Petitioner is currently pursuing a petition for review in the Ninth Circuit. At this juncture, the record does not contain sufficient information to allow the Court to make a prediction as to the likelihood of Petitioner's success with his pending claims. In the absence of any evidence that Petitioner's appeals are frivolous or taken in bad faith, the Court finds this factor weighs neutrally.

     *vii.* *Weighing the Factors*

As discussed above, three of the eight factors weigh in Petitioner's favor, three of the factors weigh in the Government's favor, and the remaining two factors are neutral. Consequently, on this balance, the Court is not persuaded Petitioner's prolonged mandatory detention without a bond hearing has become unreasonable at this juncture. In this Court's view, the factors favoring the Government, *i.e.*, those that relate to Petitioner's criminal history, outweigh those favoring Petitioner, *i.e.,* those that relate to the length of Petitioner's detention

and possible future detention. The Court therefore concludes Petitioner's detention does not violate due process and that he is therefore not entitled to a bond hearing at this time.

## IV.    CONCLUSION

For the forgoing reasons, this Court recommends that Respondent's motion to dismiss (dkt. # 8) be GRANTED, and that Petitioner's habeas petition (dkt. # 5) be DENIED. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 29, 2023**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Benjamin H. Settle.

Dated this 8th day of December, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge